IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF KANSAS


DEBORAH J. JOHNSON,

                    Plaintiff,

vs.                                    Case No. 13-1215-SAC

CAROLYN W. COLVIN,
Acting Commissioner of
Social Security,

                    Defendant.


MEMORANDUM AND ORDER

     This is an action reviewing the final decision of the
Commissioner of Social Security denying the plaintiff disability
insurance benefits and supplemental security income payments.
The matter has been fully briefed by the parties.

**I.  General legal standards**

     The court's standard of review is set forth in 42 U.S.C.
§ 405(g), which provides that "the findings of the Commissioner
as to any fact, if supported by substantial evidence, shall be
conclusive."  The court should review the Commissioner's
decision to determine only whether the decision was supported by
substantial evidence and whether the Commissioner applied the
correct legal standards.  Glenn v. Shalala, 21 F.3d 983, 984
(10th Cir. 1994).  Substantial evidence requires more than a
scintilla, but less than a preponderance, and is satisfied by

1

such evidence that a reasonable mind might accept to support the conclusion.  The determination of whether substantial evidence supports the Commissioner's decision is not simply a quantitative exercise, for evidence is not substantial if it is overwhelmed by other evidence or if it really constitutes mere conclusion.  Ray v. Bowen, 865 F.2d 222, 224 (10th Cir. 1989). Although the court is not to reweigh the evidence, the findings of the Commissioner will not be mechanically accepted.  Nor will the findings be affirmed by isolating facts and labeling them substantial evidence, as the court must scrutinize the entire record in determining whether the Commissioner's conclusions are rational.  Graham v. Sullivan, 794 F. Supp. 1045, 1047 (D. Kan. 1992).  The court should examine the record as a whole, including whatever in the record fairly detracts from the weight of the Commissioner's decision and, on that basis, determine if the substantiality of the evidence test has been met.  Glenn, 21 F.3d at 984.

The Social Security Act provides that an individual shall be determined to be under a disability only if the claimant can establish that they have a physical or mental impairment expected to result in death or last for a continuous period of twelve months which prevents the claimant from engaging in substantial gainful activity (SGA).  The claimant's physical or mental impairment or impairments must be of such severity that

they are not only unable to perform their previous work but cannot, considering their age, education, and work experience, engage in any other kind of substantial gainful work which exists in the national economy.  42 U.S.C. § 423(d).

The Commissioner has established a five-step sequential evaluation process to determine disability.  If at any step a finding of disability or non-disability can be made, the Commissioner will not review the claim further.  At step one, the agency will find non-disability unless the claimant can show that he or she is not working at a "substantial gainful activity."  At step two, the agency will find non-disability unless the claimant shows that he or she has a "severe impairment," which is defined as any "impairment or combination of impairments which significantly limits [the claimant's] physical or mental ability to do basic work activities."  At step three, the agency determines whether the impairment which enabled the claimant to survive step two is on the list of impairments presumed severe enough to render one disabled.  If the claimant's impairment does not meet or equal a listed impairment, the inquiry proceeds to step four, at which the agency assesses whether the claimant can do his or her previous work; unless the claimant shows that he or she cannot perform their previous work, they are determined not to be disabled.  If the claimant survives step four, the fifth and final step

3

requires the agency to consider vocational factors (the claimant's age, education, and past work experience) and to determine whether the claimant is capable of performing other jobs existing in significant numbers in the national economy. Barnhart v. Thomas, 124 S. Ct. 376, 379-380 (2003).

The claimant bears the burden of proof through step four of the analysis. Nielson v. Sullivan, 992 F.2d 1118, 1120 (10th Cir. 1993). At step five, the burden shifts to the Commissioner to show that the claimant can perform other work that exists in the national economy. Nielson, 992 F.2d at 1120; Thompson v. Sullivan, 987 F.2d 1482, 1487 (10th Cir. 1993). The Commissioner meets this burden if the decision is supported by substantial evidence. Thompson, 987 F.2d at 1487.

Before going from step three to step four, the agency will assess the claimant's residual functional capacity (RFC). This RFC assessment is used to evaluate the claim at both step four and step five. 20 C.F.R. §§ 404.1520(a)(4), 404.1520(e,f,g); 416.920(a)(4), 416.920(e,f,g).

## II. History of case

On May 26, 2011, administrative law judge (ALJ) Evelyn M. Gunn issued her decision (R. at 19-33). The Appeals Council granted the request for review, and on April 11, 2013 issued the final decision of the Commissioner (R. at 9-12). The Appeals Council noted that plaintiff had been found to be disabled as of

February 25, 2009; thus, the only issue before them was whether
plaintiff was disabled prior to that date (R. at 10).

   Plaintiff alleges that she had been disabled since
September 20, 2002 (R. at 19).  Plaintiff is insured for
disability insurance benefits through December 31, 2007 (R. at
21).  At step one, the ALJ found that plaintiff did not engage
in substantial gainful activity since the alleged onset date (R.
at 22).  At step two, the ALJ found that plaintiff had the
following severe impairments: substance abuse, chronic neck
pain, left arm pain, and degenerative disc disease (R. at 22).
At step three, the ALJ determined that plaintiff's impairments
meet listed impairment 12.04 (affective disorders), 12.06
(anxiety related disorders) and 12.09 (substance addiction
disorders) (R. at 23).

   If plaintiff stopped the substance use, plaintiff would
still have a severe impairment or combination of impairments.
However, the ALJ found that if plaintiff stopped substance use,
she would not have a severe mental impairment (R. at 24).  At
step three, if plaintiff stopped substance use, plaintiff would
not have an impairment that would meet or equal a listed
impairment (R. at 26).[1]

   After determining plaintiff's RFC (R. at 26-27), the ALJ
determined at step four that plaintiff is unable to perform past

---

[1] The remaining findings are based on whether plaintiff stopped the substance use (R. at 26-33).

relevant work (R. at 31).  At step five, the ALJ found that
plaintiff could perform work that exists in significant numbers
in the national economy (R. at 32).  Therefore, the ALJ
concluded that plaintiff was not disabled (R. at 33).

**III.  Did the ALJ err in the weight accorded to the opinions of
Dr. Jonas, a psychiatrist who testified at the hearing, when
determining the severity of plaintiff's mental impairments and
in making the RFC findings?**

Plaintiff argues that the ALJ erred at step two in finding
that plaintiff's impairments were nonsevere.  The burden of
proof at step two is on the plaintiff.  See Nielson v. Sullivan,
992 F.2d 1118, 1120 (10th Cir. 1993)(the claimant bears the
burden of proof through step four of the analysis).  A
claimant's showing at step two that he or she has a severe
impairment has been described as "de minimis."  Hawkins v.
Chater, 113 F.3d 1162, 1169 (10th Cir. 1997); see Williams v.
Bowen, 844 F.2d 748, 751 (10th Cir. 1988)("de minimis showing of
medical severity").  A claimant need only be able to show at
this level that the impairment would have more than a minimal
effect on his or her ability to do basic work activities.[2]
Williams, 844 F.2d at 751.  However, the claimant must show more

---

[2] Basic work activities are "abilities and aptitudes necessary to do most jobs," 20 C.F.R. § 404.1521(b)[416.921(b)],
including "walking, standing, sitting, lifting, pushing, pulling, reaching, carrying or handling; seeing, hearing, and
speaking; understanding, carrying out, and remembering simple instructions; use of judgment, responding
appropriately to supervision, coworkers, and usual work situations; and dealing with changes in a routine work
setting." Social Security Ruling 85-28, 1985 WL 56856 at *3; Langley v. Barnhart, 373 F.3d 1116, 1123 (10th Cir.
2004).

than the mere presence of a condition or ailment.  If the medical severity of a claimant's impairments is so slight that the impairments could not interfere with or have a serious impact on the claimant's ability to do basic work activities, the impairments do not prevent the claimant from engaging in substantial work activity.  Thus, at step two, the ALJ looks at the claimant's impairment or combination of impairments only and determines the impact the impairment would have on his or her ability to work.  Hinkle v. Apfel, 132 F.3d 1349, 1352 (10th Cir. 1997).  A claimant must provide medical evidence that he or she had an impairment and how severe it was during the time the claimant alleges they were disabled.  20 C.F.R. § 404.1512(c), § 416.912(c).

Even assuming plaintiff met his burden of proving that plaintiff had a severe mental impairment, the issue before the court would be whether it is reversible error if the ALJ fails to list all the severe impairments at step two.  In Brescia v. Astrue, 287 Fed. Appx. 626, 628-629 (10th Cir. July 8, 2008), the claimant argued that the ALJ improperly determined that several of her impairments did not qualify as severe impairments.  The court held that once an ALJ has found that plaintiff has at least one severe impairment, a failure to designate another as "severe" at step two does not constitute reversible error because, under the regulations, the agency at

later steps considers the combined effect of all of the claimant's impairments without regard to whether any such impairment, if considered separately, would be of sufficient severity. In Hill v. Astrue, 289 Fed. Appx. 289, 291-292 (10th Cir. Aug. 12, 2008), the court held that once the ALJ finds that the claimant has any severe impairment, he has satisfied the analysis for purposes of step two. The ALJ's failure to find that additional alleged impairments are also severe is not in itself cause for reversal. However, the ALJ, in determining plaintiff's RFC, must consider the effects of all of the claimant's medically determinable impairments, both those he deems "severe" and those "not severe."

      The ALJ relied on the testimony of Dr. Jonas to find that the medical record does not support the diagnoses of bipolar disorder or obsessive-compulsive disorder (R. at 22, 24). Plaintiff points out that medical treatment records include a psychiatric evaluation which diagnosed plaintiff with obsessive-compulsive personality disorder in 2005 (R. at 461-463), and treatment notes which diagnosed bipolar disorder in 2006 (R. at 219, 451). These diagnoses were made on other occasions as well (e.g., R. at 495, August 2007). However, Dr. Jonas provided detailed explanations in support of his testimony that the evidence did not support a diagnosis of bipolar disorder, and his testimony that it is not really clear that the diagnosis of

obsessive-compulsive disorder has led to significant functional impairments (R. at 876, 883-885).

The court will not reweigh the evidence or substitute its judgment for that of the Commissioner. Hackett v. Barnhart, 395 F.3d 1168, 1173 (10th Cir. 2005); White v. Barnhart, 287 F.3d 903, 905, 908, 909 (10th Cir. 2002). Although the evidence may support a contrary finding, the court cannot displace the agency's choice between two fairly conflicting views, even though the court may have justifiably made a different choice had the matter been before it de novo. Oldham v. Astrue, 509 F.3d 1254, 1257-1258 (10th Cir. 2007).

The medical record does show diagnoses of bipolar disorder and obsessive-compulsive disorder; Dr. Jonas, in his testimony, acknowledged those diagnoses, but stated his reasons for finding that the diagnosis of bipolar disorder was not supported by the records (R. at 876, 883). The ALJ could reasonably rely on the testimony of Dr. Jonas in finding that the record does not support the diagnosis of bipolar disorder.

Although the ALJ found that Dr. Jonas opined that the record does not support the diagnosis of obsessive-compulsive disorder (R. at 24), Dr. Jonas in his testimony actually indicated that it is not really clear that the obsessive-compulsive disorder has led to significant functional

impairments (R. at 884).  However, Dr. Jonas clearly considered the impact, if any, of the obsessive-compulsive disorder when offering his opinions regarding plaintiff's RFC,  and the ALJ gave "considerable" weight to his opinions (R. at 30).

In making her RFC findings, the ALJ stated that she considered all symptoms and the extent to which these symptoms can reasonably be accepted as consistent with the objective medical evidence and other evidence; the ALJ also stated that she considered the opinion evidence (R. at 27).  In fact, the ALJ discussed each of the medical opinions, and set forth her reasons for the relative weight accorded to those opinions (R. at 30-31).  In light of the fact that the ALJ found other severe impairments at step two, considered all symptoms and evidence when making her RFC findings, considered all of plaintiff's impairments, and gave great weight to the opinions of Dr. Jonas, who considered plaintiff's obsessive-compulsive disorder, the court finds that the ALJ's determination that the record does not support the diagnosis of obsessive-compulsive disorder is not reversible error.

The next issue is whether the ALJ erred by giving considerable weight to the opinions of Dr. Jonas in making his RFC findings.  The ALJ found that, absent substance use, plaintiff would not have a severe mental impairment (R. at 24).

At the hearing, Dr. Jonas was asked about plaintiff's mental RFC absent alcohol.  He stated that there is no clear description of an impairment in the areas listed on the mental medical source statement form (R. at 887).  He testified that, absent alcohol, she should have her normal baseline capacity to do the things that she typically did, including waitressing, tending bar and doing construction related tasks (R. at 887-888).  Dr. Jonas noted that Dr. Cohen found no evidence of cognitive impairment (R. at 889).  Dr. Jonas found no limitation in concentration, persistence, or pace, no limitation in social interaction, and no limitation in adaptation to a work environment (R. at 890-891).  Dr. Jonas specifically discussed the opinions rendered by Edna Hamera, ARNP, on a form dated January 9, 2009 (R. at 599-600), and Dr. Cohen on July 17, 2007 (R. at 398-400).  Dr. Jonas testified that the limitations expressed by ARNP Hamera were not supported by the medical record, and explained the basis for his opinion (R. at 885-887), and he also testified that he did not agree with the limitations expressed by Dr. Cohen, again explaining the basis for his conclusions (889-891).

Three mental RFC assessments were prepared on the plaintiff which were before the ALJ: (1) Dr. Cohen, a non-examining medical source, July 17, 2007 (R. at 398-400), (2) treatment provider ARNP Hamera, ARNP, January 9, 2009 (R. at 599-600), and

(3) treatment provider Dr. Killam, January 27, 2009 (R. at 774-775).  The ALJ gave greater weight to the testimony of Dr. Jonas, and gave little weight to these other opinions.  As the ALJ correctly stated, none of the medical opinions, with the exception of Dr. Jonas, considered the extent of plaintiff's impairments absent alcohol abuse.  Only Dr. Jonas addressed that specific question (R. at 30).  The court will not reweigh the evidence.  The ALJ could reasonably rely on the testimony of Dr. Jonas in making his mental RFC findings, especially in light of the fact that only Dr. Jonas testified about plaintiff's limitations absent alcohol or drug use.

**IV.  Did the ALJ err in finding plaintiff's alcohol dependence material to a determination of disability?**

In 1996, Congress passed Public Law 104-121.  It added the following language to 42 U.S.C. § 423(d)(2):

> (C) An individual shall not be considered to
> be disabled for purposes of this title if
> alcoholism or drug addiction would (but for
> this subparagraph) be a contributing factor
> material to the Commissioner's determination
> that the individual is disabled.

20 C.F.R. § 404.1535 (disability insurance) and § 416.935 (SSI) are identical, and are the implementing regulations governing this issue.  The implementing regulations make clear that a finding of disability is a condition precedent to an application of §423(d)(2)(C).  The Commissioner must first make a

determination that the claimant is disabled.  He must then make
a determination whether the claimant would still be found
disabled if he or she stopped abusing alcohol or drugs.  If so,
then the alcohol or drug use is not a contributing factor
material to the finding of disability.  If however, the
claimant's remaining impairments would not be disabling without
the alcohol or drug abuse, then the alcohol or drug abuse is a
contributing factor material to the finding of disability.  The
ALJ cannot begin to apply §423(d)(2)(C) properly when he has not
yet made a finding of disability.  Drapeau v. Massanari, 255
F.3d 1211, 1214-1215 (10th Cir. 2001).  In other words, an ALJ
must first conduct the five-step inquiry without separating out
the impact of alcoholism or drug addiction.  If the ALJ finds
that the claimant is not disabled under the five-step inquiry,
then the claimant is not entitled to benefits and there is no
need to proceed with the analysis under §§ 404.1535 or 416.935.
If the ALJ finds that the claimant is disabled and there is
medical evidence of his or her drug addiction or alcoholism,
then the ALJ should proceed under §§ 404.1535 or 416.935 to
determine if the claimant would still be found disabled if he or
she stopped using alcohol or drugs.  Bustamante v. Massanari,
262 F.3d 949, 955 (9th Cir. 2001).

    Dr. Jonas testified regarding plaintiff's mental RFC
without alcohol.  As noted above, he testified that she would

have her normal baseline capacity to do prior work, and the
evidence further suggested she would not have many functional
impairments (R. at 887-888).  He stated that she is very much
more intact after she becomes sober, and that there is no clear
description of an impairment when she is sober (R. at 887).  Dr.
Jonas noted that Dr. Cohen found no evidence of cognitive
impairment (R. at 889).  Dr. Jonas further stated that, absent
alcohol, plaintiff would have no limitation in concentration,
persistence, and pace, no limitation in social interaction, and
no limitation in adaptation (R. at 889-891).  There is no
medical opinion testimony disputing this opinion by Dr. Jonas
regarding plaintiff's impairments when not abusing alcohol.  The
court finds that substantial evidence supported the
determination by the ALJ that plaintiff could perform
substantial gainful activity absent alcohol abuse.

**V.  Did the ALJ err in her credibility analysis?**

     Credibility determinations are peculiarly the province of
the finder of fact, and a court will not upset such
determinations when supported by substantial evidence.  However,
findings as to credibility should be closely and affirmatively
linked to substantial evidence and not just a conclusion in the
guise of findings.  Kepler v. Chater, 68 F.3d 387, 391 (10th
Cir. 1995).  Furthermore, the ALJ cannot ignore evidence

favorable to the plaintiff.  Owen v. Chater, 913 F. Supp. 1413, 1420 (D. Kan. 1995).

When analyzing evidence of pain, the court does not require a formalistic factor-by-factor recitation of the evidence.  So long as the ALJ sets forth the specific evidence he relies on in evaluating the claimant's credibility, the ALJ will be deemed to have satisfied the requirements set forth in Kepler.  White v. Barnhart, 287 F.3d 903, 909 (10th Cir. 2002); Qualls v. Apfel, 206 F.3d 1368, 1372 (10th Cir. 2000).  Furthermore, the ALJ need not discuss every relevant factor in evaluating pain testimony. Bates v. Barnhart, 222 F. Supp.2d 1252, 1260 (D. Kan. 2002).  An ALJ must therefore explain and support with substantial evidence which part(s) of claimant's testimony he did not believe and why.  McGoffin v. Barnhart, 288 F.3d 1248, 1254 (10th Cir. 2002).  It is error for the ALJ to use standard boilerplate language which fails to set forth the specific evidence the ALJ considered in determining that a claimant's complaints were not credible.  Hardman v. Barnhart, 362 F.3d 676, 679 (10th Cir. 2004).  On the other hand, an ALJ's credibility determination which does not rest on mere boilerplate language, but which is linked to specific findings of fact fairly derived from the record, will be affirmed by the court.  White, 287 F.3d at 909-910.

The court will not reweigh the evidence or substitute its judgment for that of the Commissioner.  Hackett v. Barnhart, 395 F.3d 1168, 1173 (10th Cir. 2005); White v. Barnhart, 287 F.3d 903, 905, 908, 909 (10th Cir. 2002).  Although the court will not reweigh the evidence, the conclusions reached by the ALJ must be reasonable and consistent with the evidence.  See Glenn v. Shalala, 21 F.3d 983, 988 (10th Cir. 1994)(the court must affirm if, considering the evidence as a whole, there is sufficient evidence which a reasonable mind might accept as adequate to support a conclusion).  The court can only review the sufficiency of the evidence.  Although the evidence may support a contrary finding, the court cannot displace the agency's choice between two fairly conflicting views, even though the court may have justifiably made a different choice had the matter been before it de novo.  Oldham v. Astrue, 509 F.3d 1254, 1257-1258 (10th Cir. 2007).

The court has carefully reviewed the arguments of the parties, and finds that substantial evidence supports the ALJ's credibility findings.  Although plaintiff points out certain pieces of evidence that may not support the ALJ's credibility findings (Doc. 10 at 26-28), defendant's brief points to evidence that does support the ALJ's credibility findings (Doc. 17 at 7-8).  Dr. Jonas testified that, based on his review of the records, that plaintiff is very much more intact when sober,

and that there is no clear description of a mental impairment when sober (R. at 887).  The court will not reweigh the evidence.

IT IS THEREFORE ORDERED that the judgment of the Commissioner is affirmed pursuant to sentence four of 42 U.S.C. § 405(g).

Dated this 6th day of August 2014, Topeka, Kansas.


s/Sam A. Crow
Sam A. Crow, U.S. District Senior Judge